MARGARET ROSENTHAL, SBN 147501
SHAREEF S. FARAG, SBN 251650
NICHOLAS D. POPER, SBN 293900
**BAKER & HOSTETLER LLP**
11601 Wilshire Boulevard, Suite 1400
Los Angeles, CA  90025-0509
Telephone:  310.820.8800
Facsimile:  310.820.8859
Email:   mrosenthal@bakerlaw.com
         sfarag@bakerlaw.com
         npoper@bakerlaw.com

*Attorneys for Defendant*
THE SHERWIN-WILLIAMS COMPANY
(erroneously sued as The Sherman-Williams Company)

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VERNON FIFE, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>THE SHERMAN-WILLIAMS COMPANY, and DOES 1 to 50, inclusive,<br><br>Defendants. | Case No.: 1:18-at-00514<br><br>**NOTICE OF REMOVAL OF ACTION TO FEDERAL COURT**<br><br>[Filed concurrently with Civil Cover Sheet; Corporate Disclosure Statement]<br><br>Action Filed:  June 4, 2018 |

**TO THE CLERK OF THE ABOVE-ENTITLED COURT:**

**PLEASE TAKE NOTICE** that, pursuant to 28 U.S.C. §§ 1332, 1441 and 1446, The Sherwin-Williams Company ("Defendant"), erroneously sued as "The Sherman-Williams Company", removes the action filed by Vernon Fife ("Plaintiff") in the Superior Court of the State of California, in and for the County of Stanislaus, and captioned Case No. CV-18-000698, to the United States District Court for the Eastern District of California.

## JURISDICTION AND VENUE

1. This is a civil action over which this Court has original subject matter jurisdiction under 28 U.S.C. § 1332, and removal is proper under 28 U.S.C. §§ 1441 and 1446, because it is a civil action that satisfies the requirements stated in the Class Action Fairness Act of 2005 ("CAFA"), codified in part at 28 U.S.C. § 1332(d).

2. This Court is in the judicial district and division embracing the place where the state court case was brought and is pending. Thus, this Court is the proper district court to which this case should be removed. 28 U.S.C. §§ 1441(a) and 1446(a).

## THE ACTION & TIMELINESS OF REMOVAL
## PROCEDURAL BACKGROUND

3. On June 4, 2018, Plaintiff, purportedly on behalf of himself and all others similarly situated, filed a Class Action Complaint against Defendant in the Superior Court of the State of California, in and for the County of Stanislaus, Case No. CV-18-00698 (the "State Court Action"). Plaintiff filed the complaint as a putative class action.

4. On June 13, 2018, Defendant was served with a copy of the Summons and Complaint.

///

///

5. Pursuant to 28 U.S.C. § 1446(b), this removal is timely because Defendant filed this removal within 30 days of its receipt of a copy of the Summons and Complaint in the State Court Action.

6. Exhibit "A" constitutes all process, pleadings, and orders served on Defendant in the State Court Action.

7. Defendant filed its Answer in the State Court Action on July 10, 2018. A true and correct copy of Defendant's Answer is attached as Exhibit "B".

## CAFA JURISDICTION

8. <u>Basis of Original Jurisdiction</u>. This Court has original jurisdiction of this action under CAFA. 28 U.S.C. § 1332(d)(2) and (4) provide that a district court shall have original jurisdiction of a class action with one hundred (100) or more putative class members, in which the matter in controversy, in the aggregate, exceeds the sum or value of $5 million. Section 1332(d)(2) further provides that any member of the putative class must be a citizen of a state different from any defendant.

9. As set forth below, pursuant to 28 U.S.C. § 1441(a), Defendant may remove the State Court Action to federal court under CAFA because: (i) the amount in controversy, in the aggregate, exceeds the sum or value of $5,000,000, exclusive of interest and costs; (ii) this action is pled as a class action and involves more than one hundred (100) putative class plaintiffs; and (iii) members of the putative class are citizens of a state different from Defendant.

## DIVERSITY OF CITIZENSHIP

10. <u>Plaintiff's Citizenship</u>. As alleged in the Complaint, Plaintiff "is a resident of the State of California." (Complaint ¶ 2). For diversity purposes, a person is a "citizen" of the state in which he or she is domiciled. *Kantor v. Wellesley Galleries, Ltd.,* 704 F.2d 1088, 1090 (9th Cir. 1983). Residence is prima facie evidence of domicile. *State Farm Mutual Auto Ins. Co. v. Dyer,* 19 F. 3d 514, 520 (10th Cir. 1994). Accordingly, Plaintiff is a citizen of the State of California.

11. <u>The Sherwin-Williams Company's Citizenship</u>.  Defendant is a citizen of the State of Ohio. Pursuant to 28 U.S.C. § 1332(c), "a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business." The United States Supreme Court has concluded that a corporation's "principal place of business" is "where a corporation's officers direct, control, and coordinate the corporation's activities," which the Court referred to as its "nerve center." *Hertz Corp. v. Friend*, 130 S.Ct. 1181, 1192 (2010). "[I]n practice," a corporation's "nerve center" should "normally be the place where the corporation maintains its headquarters." *Id*. "The public often (though not always) considers it the corporation's main place of business." *Id*. at 1193.

12. At the time the State Court Action commenced, Defendant was, and as of the date of filing of this Notice still is, a corporation formed in and incorporated under the laws of the State of Ohio. Pursuant to the *Hertz* nerve center test, Defendant has its principal place of business in Ohio. Defendant's headquarters are located at 101 W Prospect Avenue, Cleveland, Ohio 44115. In addition, the majority of Defendant's officers direct, control, and coordinate the corporation's activities from that same location – 101 W Prospect Avenue, Cleveland, Ohio 44115.

13. <u>Doe Defendants</u>.  Although Plaintiff has also named fictitious defendants "DOES 1 to 50," 28 U.S.C. § 1441(a) provides, "[f]or purposes of removal under this chapter, the citizenship of defendants sued under fictitious names shall be disregarded." *See also Fristos v. Reynolds Metals Co.*, 615 F.2d 1209, 1213 (9th Cir. 1980) (unnamed defendants are not required to join in a removal petition).  Thus, the existence of "Doe" defendants does not deprive the Court of jurisdiction.

///

///

14. <u>Minimal Diversity</u>. Minimal diversity of citizenship is established, pursuant to CAFA, inasmuch as Plaintiff (who is a member of the putative class) is a citizen of the State of California, and Defendant is a citizen of the State of Ohio. *See* 28 U.S.C. § 1332(d)(2).

15. <u>Size of the Class</u>. Plaintiff filed the State Court Action as a class action. While Plaintiff does not allege a specific class size, the relevant period for various claims made by Plaintiff is four years prior to the filing of the State Court Action. Four years prior to Plaintiff's filing of the Complaint is June 4, 2014. Between June 4, 2014 and Plaintiff's filing of his Complaint, Defendant employed approximately 477 individuals in California as assistant store managers (the putative class definition provided in the Complaint). (Complaint ¶ 5.) Therefore, per the allegations of the Complaint, the class size is 477 individuals.

## AMOUNT IN CONTROVERSY UNDER CAFA

16. Removal is appropriate when it is more likely than not that the amount is controversy exceeds the jurisdictional requirement, which in this case is $5,000,000 in the aggregate. *See, e.g.*, *Cohn v. PetsMart, Inc.*, 281 F.3d 837, 839-40 (9th Cir. 2002). The amount in controversy is determined by the complaint operative at the time of removal and encompasses all relief a court may grant if the plaintiff is victorious. *Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 414 (9th Cir. 2018).

17. This action involves Plaintiff's alleged claims against Defendant for: failure to reimburse for the cost and use of personal cell phones, failure to pay regular wages owed, failure to pay overtime wages owed, failure to provide accurate, itemized wage statements, failure to pay all wages due at the time of termination of employment, and unfair competition. Plaintiff's prayer for relief seeks an award of compensatory damages, statutory damages, penalties, restitution,

///

///

1  treble damages pursuant to Labor Code Section 206, pre-judgment and post-
2  judgment interest, and attorneys' fees and costs.  (See Complaint, Prayer for
3  Relief.)

4       18.    <u>Amount in Controversy</u>.  Without conceding that Plaintiff or the
5  purported class members are entitled to or could recover damages in any amount,
6  the amount in controversy in this putative class action, in the aggregate, is well in
7  excess of $5,000,000, exclusive of interest and costs.

     a.  <u>Variables</u>.

- During the period of June 4, 2014 to the present, applicable to Plaintiff's straight time, overtime, and reimbursement claims, Defendant employed approximately 477 individuals in California as non-exempt assistant store managers. These 477 individuals worked a total of 67,377 workweeks since June 4, 2014. The average hourly rate of pay among this group is approximately $19.65.
- During the period of June 4, 2015 to the present, applicable to Plaintiff's waiting time penalties claim, approximately 189 putative class members separated from employment with Defendant.
- During the period of June 4, 2017 to the present, applicable to Plaintiff's wage statement claim, Defendant employed approximately 325 putative class members. These 325 individuals worked a total of 7,788 pay periods since June 4, 2017.

     b.  <u>Claim #1: Failure to Reimburse Cell Phone Expenses</u>.

Plaintiff alleges that he and other members of the putative class "were required to use their personal cell phones for work-related calls from other Sherwin-Williams employees," that it was mandatory that the putative class members personal phone numbers be displayed in all stores so that employees could contact them, and that they "regularly received and responded to calls" from employees regarding work-related matters. (Complaint ¶¶ 6-7.)  Plaintiff further

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

alleges that Defendant did not reimburse Plaintiff and the putative class members for the cost of their personal cell phones or for usage charges. (Complaint ¶ 17.) Plaintiff alleges that Defendant's conduct is ongoing to this date. (Complaint ¶ 36.) Although Defendant denies all liability, assuming conservatively, for purposes of this analysis only, that each putative class member working in California at any given time during the relevant period was not reimbursed for the cost of their personal cell phones or for usage charges during each month worked, and assuming conservatively that each putative class member would reasonably be entitled to 60% of the costs associated with their usage of personal cell phones, the amount in controversy for this claim would be approximately **$748,622** (calculated as: average cost of cell phone service per month[1] x 60% for work-related usage x total number of months worked by the putative class in between June 4, 2014 and the present).[2]

   c. Claim #2: Failure to Pay Straight Time and Overtime Wages.

Plaintiff alleges that "[d]uring all relevant periods," Defendant did not pay Plaintiff and the putative class members for all hours worked. (Complaint ¶ 21.) Specifically, Plaintiff alleges that he and other members of the putative class "regularly received and responded to phone calls from store employees, when they were not at work, regarding work-related matters," and that Defendant did not pay either regular or overtime compensation to Plaintiff and the putative class members for the time spent responding to these calls. (Complaint ¶¶ 7, 21.)

Although Defendant denies all liability, assuming conservatively, for purposes of this analysis only, that each putative class member working in California at any given time during the relevant period worked, but was not compensated for, 1 hour of straight time and 1.5 hours of overtime per work week, the amount in controversy for this claim would be approximately **$4,302,864** (calculated as: the sum of [average hourly rate of pay x 1 hour of regular

---

[1] According to the Bureau of Labor Statistics, in 2014 the average annual expenditures for cellular phone service was $963 (or $80.25 per month).
[2] Based on the above variables and formula, calculated as: $80.25 x .60 x 15,549.

compensation per week x total number of weeks worked by the putative class in between June 4, 2014 and the present] + [average hourly rate of pay x 1.5 x 1.5 hours of overtime compensation per week x total number of weeks worked by the putative class in between June 4, 2014 and the present]).[3]

        d. <u>Claim #3: Failure to Provide Accurate, Itemized Wage Statements</u>.

Plaintiff alleges that the wage statements Defendant provided to Plaintiff and the putative class members "do not accurately reflect the actual hours worked, actual gross wages earned, or actual net wages earned." (Complaint ¶ 26.) Plaintiff further alleges that he and the putative class members "regularly received and responded to phone calls from store employees" and that Defendant "systematically failed to include this time worked in the wage statements." (Complaint ¶¶ 7, 26-27.)  Additionally, Plaintiff alleges that Defendant "failed to accurately show Plaintiff's and putative class members' regular rates and overtime rates of pay, in part by not including all remuneration in the regular rate of pay calculation and by failing to show accurate overtime rates of pay." (Complaint ¶ 26.)  Plaintiff alleges that Defendant's failure to provide accurate itemized wage statements is ongoing to this date. (Complaint ¶ 36.)

Plaintiff, on behalf of himself and the putative class, seeks damages pursuant to California Labor Code Section 226(e), which permits recovery in the amount of $50 per employee for the initial pay period in which a wage statement violation occurred and $100 per employee for each violation in a subsequent pay period, not to exceed a maximum aggregate penalty of $4,000 per employee. (Complaint ¶ 28.)  Approximately 325 putative class members were employed by Defendant during the one-year statutory period.  Using the total number of pay periods worked by each of the 325 putative class members, and the statutory penalty of $50 for each initial violation and $100 for each subsequent violation, the

---

[3] Based on the above variables and formula, calculated as: ($19.65 x 1 x 67,377) + ($19.65 x 1.5 x 1 x 67,377).

amount in controversy is approximately **$762,550** (calculated as: the sum of [$50 penalty for each initial violation x 325 initial pay periods worked by the putative class] + [$100 penalty for each subsequent violation x 7,463 subsequent pay periods worked by the putative class]).

      e. <u>Claim #4: Failure to Pay All Wages Upon Termination</u>.

Plaintiff alleges that Defendant did not pay all wages due upon termination for Plaintiff and the putative class members for time spent taking and responding to calls from employees on their personal cell phones, and that they "regularly received" these calls. (Complaint ¶¶ 7, 32.) Plaintiff further alleges that Defendant's conduct violated California Labor Code Sections 203 and 204, and is ongoing to this date. (Complaint ¶¶ 32, 36.) California Labor Code Section 203 provides that a former employee shall receive regular daily wages for each day they were not paid, at their hourly rate, for up to thirty days. Approximately 189 members of the proposed subclass separated from employment during the three-year statutory period. Using the average hourly rate of pay, and conservatively assuming that the putative class members work only 8 hours per day, the amount in controversy for this claim would be approximately **$891,324** (calculated as: 189 separated employees x 8 hours x average hourly rate of pay x 30 days).

      f. <u>Claims for Labor Code § 558 Penalties</u>.

In addition to the claims discussed above, Plaintiff seeks damages pursuant to Labor Code § 558. (Complaint ¶¶ 2, 11(d), 36 and Prayer for Relief.) Labor Code § 558 states that any employer or other person acting on behalf of an employer who violates any provision regulating hours and days of work in any order of the Industrial Welfare Commission shall be subject to a civil penalty as follows: (1) $50 for initial violation, (2) $100 for each subsequent violation, and (3) an amount sufficient to recover underpaid wages. Assuming for purposes of this analysis only that, based on Plaintiff's unpaid straight time and overtime allegations, each putative class member employed during the one-year statutory

NOTICE OF REMOVAL OF ACTION TO FEDERAL COURT
4830-1226-0205.5

period was underpaid each pay period, the amount in controversy for this claim would be approximately **$762,550** (calculated as: the sum of [$50 penalty for each initial violation x 325 initial pay periods worked by the putative class] + [$100 penalty for each subsequent violation x 7,463 subsequent pay periods worked by the putative class]).

      g. <u>Total Amount in Controversy.</u>

Based on the claims described above, the class-wide amount in controversy, conservatively estimated, is at least **$7,467,910**. "As specified in § 1446(a), a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold; the notice need not contain evidentiary submissions." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 549 (2014). A summary of the amount in controversy discussed above is as follows:

| Claim | Amount in Controversy |
|---|---|
| Failure to Reimburse Business Expenses | $748,622 |
| Failure to Pay All Wages Owed | $4,302,864 |
| Failure to Provide Accurate Itemized Wage Statement | $762,550 |
| Failure to Pay All Wages Upon Termination | $891,324 |
| Labor Code § 558 Penalties | $762,550 |
| **TOTAL:** | **$7,467,910** |

    19.   <u>Amount in Controversy for Remaining Cause of Action.</u> The above amounts exceed the $5 million CAFA minimum before taking into account Plaintiff's additional claim for failure to pay overtime wages at the legal overtime pay rate, which is further evidence that the amount in controversy exceeds $5,000,000, as already established.

20. <u>Total Amount in Controversy for All Causes of Action.</u>  Based on the claims described above, the class-wide amount in controversy, conservatively estimated, is well in excess of $5,000,000.

21. <u>Other Claims.</u>  In addition to the damages discussed above, Plaintiff also requests treble damages and restitution (among other forms of relief not calculated above) for the putative class members. (Complaint, Prayer for Relief.) No allegations in the Complaint allow Defendant to calculate the amount of these alleged damages and relief. However, Defendant points out the allegations to the Court as further evidence that the amount in controversy exceeds $5,000,000, as already established above.

## ATTORNEYS' FEES

22. When the underlying substantive law provides for the award of attorneys' fees, a party may include that amount in their calculation of the amount in controversy. *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1156 (9th Cir. 1998). Plaintiff has sought attorneys' fees in the Complaint which are permitted by Cal. Labor Code §§ 1194 and 1021.5 for the Labor Code violations alleged in the Complaint.  They should therefore be included in analyzing the amount in controversy, if needed.  Conservatively, we do not include them in the above calculations.

///
///
///

# NOTICE

23. As required by 28 U.S.C. § 1446(d), Defendant is providing written notice of the filing of this Notice of Removal to Plaintiff, and is filing a copy of this Notice of Removal with the Clerk of the Superior Court of the State of California, in and for the County of Stanislaus.

Dated: July 12, 2018

Respectfully submitted,

**BAKER & HOSTETLER, LLP**

By: */s/ Shareef S. Farag*
    Margaret Rosenthal
    Shareef S. Farag
    Nicholas D. Poper

*Attorneys for Defendant*
THE SHERWIN-WILLIAMS COMPANY (erroneously sued as The Sherman-Williams Company)

**PROOF OF SERVICE**

I, Priscilla Markus, declare:

I am a citizen of the United States and employed in Los Angeles County, California. I am over the age of eighteen years and not a party to the within-entitled action. My business address is 11601 Wilshire Boulevard, Suite 1400, Los Angeles, California 90025-7120. On **July 12, 2018**, I served a copy of the within document(s): **NOTICE OF REMOVAL OF ACTION TO FEDERAL COURT**

☑ **VIA U.S. MAIL** by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, the United States mail at Los Angeles, California addressed as set forth below. I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

Robin G. Workman, Esq.  
Rachel E. Davey, Esq.  
**WORKMAN LAW FIRM, PC**  
177 Post Street, Suite 800  
San Francisco, CA  94108  
Tel:     415.782.3660  
Fax:    415.788.1028  
Email: robin@workmanlawpc.com  
           rachel@workmanlawpc.com

*Attorneys for Plaintiff*  
VERNON FIFE

I hereby certify that I am employed in the office of a member of the Bar of this Court at whose discretion the service as made, and I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on **July 12, 2018** at Los Angeles, California.

_____  
Priscilla Markus